[PHILADELPHIA, JANUARY, 1830.]

APP and another, Executors of APP, *against* DREISBACH.

IN ERROR.

A decree of the Orphans' Court, confirming the settlement of an administration account, is conclusive, as to the items set out in it, and directly acted upon by the court.

If there be two executors, an action for a legacy must be against both; but if one has nothing in his hands, he may separately plead, *plene administraverunt*, and if it be found for him, judgment will be rendered in his favour.

The third section of the act of the 21st of *March*, 1772, directing the court in which an action is brought for a legacy, to appoint auditors, on the plea of want of assets, does not authorize the auditors, in an action of *assumpsit*, to ascertain the amount of a residuary legacy. The legatee must compel the executor to a settlement in the Orphans' Court, and thus ascertain the amount, or bring an action of account render, in which a statement of all the assets will be exhibited.

*It seems,* that where an executor has settled his account, exhibiting a balance in his hands, he ceases to be a trustee, and becomes a debtor for such balance, to the legatees; and is therefore, protected by the act of limitations.

Still less can an executor be considered a trustee, not protected by the act of limitations, in respect of a sum of money, charged to be due from him, which at the time of the settlement of his account, and ever afterwards, he denied to be due.

Notice given, agreeably to the rules of court, or by the directions of an act of assembly, is as effective and binding, as actual notice.

ON the return of a writ of error, by which the record of this case was removed from the Court of Common Pleas of *Northampton* county, it appeared, that *Henry Driesbach*, the defendant in error, brought an .action of *assumpsit* against *Frederick App* and *Ludwig Kleppinger*, executors of *Michael App*, deceased, for the share alleged to be due to him as one of the residuary legatees òf the said *Michael App*.

The declaration contained two counts, the first of which, set forth in substance, that the said *Michael App*, on the 25th of *March*, 1808, made his will; by which, among other things, he directed, that the whole of the residue of his estate should be sold by his executors, and as equally as possible, divided among his four children, *Frederick App*, *Mathias App*, *Leonard Hisley*, and *Henry Dreisbach:* That he appointed the defendants his executors, who proved the will, and that the sum of seven hundred and nine dollars and sixty-three cents, beyond all debts, funeral expenses and specific

(App and another, Executor of App, *v* Dreisbach.)

legacies, came into the hands of the executors, of which they became liable to pay to the plaintiff, one hundred and seventy-seven dollars and forty cents, one-fourth part thereof, which they promised to pay.

The second count was for one hundred and seventy-seven dollars and forty cents, money had and received by the defendants, for the use of the plaintiff.

The defendants pleaded *non assumpserunt, non assumpserunt infra sex annos,* and payment with leave, &c. The plaintiff took issue on the first plea, and to the last, replied *non solverunt* and issue. To the second he replied, " that the sum demanded is for a share of the residue of the estate of *Michael App,* deceased, bequeathed to the plaintiff, by the last will and testament of the said *Michael App,* and the money received in trust, and wrongfully withheld from the plaintiff." The defendants rejoined, that no such monies were received or withheld by them, and issue.

The will of *Michael App,* so far as it is material, was in these words:—

"I have sold to my son, *Frederick App,* a piece of land, situate in *Lehigh* township, *Northampton* county, as *per* agreement made, executed the 18th of *November,* in the year 1780, for the sum of three hundred pounds; one hundred pounds have been paid to me by my son. The other two hundred pounds shall be settled with him after my decease, on account of his portion.

" It is my will, that my son-in-law, *Leonard Hisley,* shall receive fifty pounds, in advance, because he has not received from me as much as the other children have; and these fifty pounds shall be paid by my herein after named executors, to him the said *Leonard Hisley,* his heirs, or attorney, as soon as sufficient money is in their hands.

" It is further my will, that all the rest of my property shall be sold by my executors, and, as much as possible, equally divided among my four children, *Frederick App, Michael App, Leonard Hisley,* and *Henry Dreisbach.*"

The plaintiff, having proved the execution of the article of agreement of the 18th of *November,* 1780, referred to in the will, offered the same in evidence; to which the defendant's counsel objected, on the ground, that it was irrelevant, and not material to the issues trying. The court, however, overruled the objection, and permitted the instrument to be read in evidence. The defendants' counsel thereupon tendered a bill of exceptions.

An exemplification of an account, settled by *Frederick App,* one of the executors of *Michael App,* deceased, before the register of *Northampton* county, on the 8th of *May,* 1813, having also been offered in evidence by the plaintiff, was objected to by the defendants' counsel, but admitted by the court, who sealed a second bill of exceptions.

The defendants then gave in evidence three receipts, given by

(App and another, Executors of App, *v.* Dreisbach.)

*Henry Dreisbach* to *Frederick App*, one of the defendants, one of them dated the 13th of *November*, 1809, for ten pounds seven shillings and nine-pence; another, dated the 11th of *November*, 1815, for twenty-seven dollars and twenty-six cents; and the third, dated the 11th of *November*, 1815, for ten dollars; it being admitted, that the last mentioned receipt was for so much received in full for any monies which might be recovered on the bond of *Jacob Eyerly*, mentioned in the administration account as a lost debt. They also gave in evidence two receipts, proved by the deposition of *Mathias App*, which, translated from the *German*, ran thus:—

" The 26th of *August*, 1803, I, *Frederick App*, have fully settled with my father, *Michael App*, all what is unsettled, (or outstanding,) what was unsettled I have received in full. So much from me.

"<em>Frederick App.</em>

" Witness, { *Henry Dreisbach,*
{ *Mathias App.*"

" The 26th of *August*, 1803, I, *Michael App*, have fully settled with my son, *Frederick App*, all what was unsettled (or outstanding,) what was unsettled I have received in full. So much from me.

"<em>Michael App.</em>

" Witness, { *Henry Dreisbach,*
{ *Mathias App.*"

The defendants then gave in evidence the record of the Orphans' Court of *Northampton* county, from which it appeared, that the account, settled and filed in the register's office on the 8th of *May*, 1813, was duly confirmed by the Orphans' Court on the 20th of *August*, 1813. In this account the sum of two hundred pounds, due from *Frederick App* to *Michael App*, was mentioned, but it was not introduced into the inventory, nor charged to the executors.

For the purpose of rebutting the evidence adduced by the defendants, the plaintiff examined *Robert Stewart*, who testified, that about the year 1802, he, at the request of *Michael App*, the testator, called on *Frederick App*, one of the defendants, and asked him why he did not pay the old man, his father, his dowry, according to the agreement entered into between them: That *Frederick* replied, " he would not: That his father and brother, *Mathias*, had cheated him; he had lent his father one hundred pounds in good money, and they had made it all out of one load of rye meal, and paid him in continental money: That he could not pay the dower any further; for if he did, this good for nothing *Philip Scholl*, would get it, and it would be of no use to the old people, or to any of them." The witness then stated to *Frederick App*, that he had seen an instrument, by which he, *Frederick App*, was bound to pay the dower, and he ought to do it. *Frederick App* said he would not.

(App and another, Executors of App, *v.* Dreisbach.)

The witness then told him, the old man had offered him one-half to collect it; and if he, *Frederick App*, said again he would not, he, the witness, would see how he could get it. *Frederick App* then said, if the old man would forgive what was back, he would pay it from that time on. There were two or three years back, the witness thought. He told him, he expected the old man would agree to it. The witness added, that the old man did agree; he sent for his son, *Mathias App*, who came in from *Selin's Grove*, and the witness understood they settled. He further stated, that it was twenty-one or twenty-two years since *Henry Dreisbach* moved away to the *Gennessee* country, in the state of *New York*, where he had lived ever since.

The plaintiff also read in evidence the deposition of *Mathias App*, taken in this cause; and by consent, the court read the notes of *Mathias App's* evidence taken on the trial. The object of this evidence was, to show the nature of the transaction between the father and son; but as no part of it was returned with the record, it is impossible to state what it was.

The evidence being closed, the counsel for the plaintiff, requested the court to charge the jury on the following points:—

" 1. That the sum of two hundred pounds, directed by the testator in his will, to be reckoned up, or to be accounted for by his son, *Frederick App*, after the testator's death, was not an advancement to the said *Frederick App*, in as much as the testator did not divest himself of all property in the same, in his life time, but made a disposition thereof by his will.

" 2. That the circumstance of the testator having made *Frederick App*, (his debtor,) his executor, is not an extinguishment of the debt; the executor in such case, being a trustee for the parties interested in the estate, and accountable in equity, for the debt due by him.

" 3. That this suit having been brought for a share of the residue of the estate of the testator, bequeathed by the will, it was right and proper to join both the executors, they having both proved the will.

" 4. That the plea of *non assumpsit infra sex annos*, cannot avail the defendants, they being considered as trustees for the next of kin, of whom the plaintiff is one, and the statute of limitations does not apply in cases of trust.

" 5. The court are requested further to charge the jury, that in a suit for a legacy, if the jury are satisfied that the executors have received assets sufficient to satisfy and pay all debts and legacies, the law will imply a promise on the part of the executors to pay, and it is not necessary to prove an express promise."

The defendants' counsel submitted to the court the following propositions, on which they requested the jury might be instructed:—

" 1. That unless it appears that *Frederick App* and *Ludwig Kleppinger*, have both actually received monies of the estate, to a

(App and another, Executors of App, *v.* Dreisbach.)

share of which the plaintiff would be entitled under the will of *Michael App*, deceased, the plaintiff cannot maintain this action.

" 2. That if the jury believe, the two hundred pounds, mentioned in the will, were intended by the testator as an advancement to *Frederick App*, no part of that sum can be recovered from the defendants.

" 3. That if the plaintiff's wife has been advanced by the testator, the plaintiff must bring that advancement into account, as so much of her portion of the estate under the will.

" 4. That the appointment by a testator, of his debtor, to be an executor, is at law a release of the debt; and if *Frederick App* were indebted to the testator in the alleged sum of two hundred pounds, he could only be held answerable for it in the settlement of his accounts in the Orphans' Court; and as he is not charged with it in his account, settled before the register, on the 8th of *May*, 1813, and confirmed in the Orphans' Court of this county, on the 20th day of *August*, A. D. 1813, he cannot be made answerable for it in this action."

Answers of the court to the points propounded by the plaintiff's counsel:—

" 1. It appears, that on the 18th day of *November*, 1780, *Michael App*, the testator, and *Frederick App*, one of the executors, entered into a contract for the sale, by the former to the latter, of a tract of land, for the consideration of three hundred pounds, to be paid by *Frederick App* to *Michael App*; one hundred pounds of this consideration money, it seems conceded, were paid, and the article of agreement states, 'and the residue of two hundred pounds, he, *Frederick App*, is to account for after the decease of his said father, *Michael App*.'

" In the will of the testator, he says, 'I have sold to my son, *Frederick App*, a piece of land, lying in *Lehigh* township, *Northampton* county, as *per* agreement, made the 18th day of *November*, in the year 1780, for the sum of three hundred pounds. One hundred pounds were paid to me by my son, *Frederick App*; the other two hundred pounds shall be settled with him after my decease, on account of his portion.'

" The defendant alleges, that these two hundred pounds were settled by him with the testator in 1803, at the time the receipts, proved by the deposition of *Mathias App*, were given; and, that *Mathias App* proves, that the alleged two hundred pounds were only an advancement.

" If the testator did intend this sum as an advancement to his son, and the son also so understood it, it must be so considered in the decision of the cause, and what was the understanding in relation to this, the jury will decide from the evidence. They are the proper judges of the facts. From the article of agreement, and the will, independent of the parol evidence, the inference is very strong,

(App and another, Executors of App, *v.* Dreisbach.)

that these two hundred pounds were considered as an advancement, and if the testator so declared it by his will, it was a good advancement in law.

"2. The naming a debtor executor, and his acceptance of the trust, do not extinguish the debt. He has always been held a trustee in *Pennsylvania*, as soon as he takes upon himself the execution of the will, to the amount of his debt. He has actually received so much money, and is accountable in his personal character, to those legally entitled to it, as the same hand is to receive that is to pay. There is no ceremony to be performed in paying the debt, and no mode of doing it, but by considering the money to be in his hands.

"3. The court admit, that the suit has been correctly brought against both the executors, but if both have not jointly received assets, they are not jointly liable, each being liable for his own acts; and in this case, there is no proof, that *Ludwig Kleppinger* ever received any part of the estate into his hands, or in any way made himself liable for any part of it.

"4. The plea of *non assumpsit infra sex annos,* does not apply to cases of legacy or trust.

"5. In suits for legacies, when the jury are satisfied, that the executors have received assets sufficient to pay and satisfy all debts and legacies, the law will imply a promise on the part of the executors; and no express promise is necessary to charge them, and of course, where they have not received such assets, no promise can be implied."

Answers to the points propounded by the defendants' counsel:—

"1. Unless it appears, that *Frederick App* and *Ludwig Kleppinger*, have both actually received monies of the estate, to a share of which the plaintiff would be entitled under the will of *Michael App,* deceased, the plaintiff cannot maintain this action.

"2. If the jury believe the two hundred pounds, mentioned in the will, were intended by the testator as an advancement to *Frederick App*, no part of that sum can be recovered from the defendants.

"3. If the plaintiff's wife was advanced, she and her husband would, in case *Michael App* had died intestate, be obliged to bring the amount so advanced, into account; but they cannot be compelled to do so in this case, where there is a will disposing of all the property of the testator.

"4. The appointment by a testator of his debtor, to be an executor, is not a release of the debt, in *Pennsylvania*. In such case, the executor is considered a trustee, as explained in the second answer to the points propounded by the plaintiff's counsel. He is accountable for it in his personal character, by a civil action, or by a settlement of his account in the Orphans' Court. And although he is not charged with it in his account, settled before the register

(App and another, Executors of App, *v.* Dreisbach.)

on the 8th of *May*, 1813, and confirmed in the Orphans' Court of this county, on the 20th of *August*, 1813, he can be made responsible by a civil action, the opposite party showing a clear mistake; such account is only *prima facie* evidence in favour of the executor settling such account, and is not conclusive. The opposite party may show errors on the face of the account, and the jury would have a right to investigate those errors. If *Frederick App*, were indebted to the testator in the alleged sum of two hundred pounds, he would be held personally answerable for it by an action in this court, or by a proceeding in the Orphans' Court in adjusting his accounts. Such settlement and confirmation would not defeat the present action. The court, at the same time, are decidedly of opinion, that *Ludwig Kleppinger* should not be charged with the whole, or any part of the two hundred pounds, if the jury believe he received no part of it."

　　The defendants' counsel excepted to the charge of the court, who sealed a bill of exceptions.

　　The jury found a verdict for the plaintiff for two hundred and forty-four dollars and thirty-one cents; and a motion made for a new trial on behalf of the defendants having been overruled, a writ of error was taken out, and the following errors assigned in this court:—

　　" 1. That the Court below erred in admitting in evidence the article of agreement, mentioned in the *first* bill of exceptions.

　　" 2. That the Court erred in admitting in evidence the copy of the administration account, as settled by *Frederick App* before the register, mentioned in the *second* bill of exceptions.

　　" 3. That the Court erred in charging the jury on the *first* point propounded by the plaintiff, and on the *second* point propounded by the defendants, and should have taken upon themselves to decide the legal effect of the language used in the article of agreement and will, and charged the jury, that the two hundred pounds therein mentioned, were to be considered as an advancement.

　　"4. That the Court erred in charging the jury on the *second* point propounded by the plaintiff, and *third* point propounded by the defendants, in regard to the law, where a testator makes his debtor his executor, and in regard to the manner of the liability of such executor.

　　" 5. That the Court erred in charging the jury relative to the statute of limitations, and its effect, and operation in this case, and also in regard to the law of advancements as applicable to this case.

　　" 6. That the Court erred in charging the jury, that in suits for legacies, the suit is correctly brought against two executors, where only one is liable for the money, and that this suit is correctly brought; no evidence having been adduced, that *Ludwig Kleppinger* ever received any money, or was liable for any.

　　" 7. That under the evidence in the cause, no such action as that

(App and another, Executors of App, *v.* Dreisbach.)

set forth in the plaintiff's declaration, was maintainable; no monies having ever come to the defendants' hands, belonging to the estate of the deceased."

" 8. That there was no issue formed by the plea of the statute of limitations, and the replication and rejoinder thereto; or, if so, it was an issue as to the actual receipt of money by the defendants, which the plaintiff did not support by proof.

"9. That the Court below erred in not setting aside the verdict, and granting a new trial.

*Brooke* and *J. M. Porter*, for the plaintiffs in error:—

1. The article of agreement, mentioned in the *first* bill of exceptions, was improperly admitted in evidence. The first count of the declaration stated, that the two defendants possessed themselves of the real and personal estate of the testator, to the amount of seven hundred and nine dollars and sixty-three cents, and that that amount actually went into the hands of both of them, whereby they became liable, &c. The second was the usual count, for money had and received. The article of agreement did not support either of these counts, and was, therefore, irrelevant. The plaintiff must prove his cause of action, as laid in the count. *Arch. C. P.* 362. In this case, the proper remedy was, an action on the special contract. *Huntsecker* v. *Heiney*, 11 *Serg. & Rawle*, 250. In actions on the money counts, the proof must accord with the allegation. A bond cannot be treated as money, though a negotiable instrument may. *Morrison* v. *Berkey*, 7 *Serg. & Rawle*, 245. It must be proved, that the money came into the hands of the defendant, and, therefore, the action is not maintainable against one of two grantees of an annuity, who was a mere surety, and who had received no part of the consideration. 2 *Stark.* 106. In *Hantz* v. *Sealy*, 6 *Binn.* 409, the law applicable to this case is clearly laid down. The action cannot be supported without proof, that the money came into the defendants' hands.

There is another ground on which the agreement was not admissible in evidence. The action is a joint one against two defendants, and the agreement in no respect affected *Kleppinger*. Courts will not take cognizance of distinct and separate claims, and the liabilities of different persons in one suit, though they stand in the same relative situations; and, therefore, in an action *ex contractu*, against several, it must appear on the face of the proceedings, that their contract was joint, and that fact must also be proved on the trial. If too many persons be made defendants, it is a fatal objection. *Chitty Pl.* 31, 32, 33. 19 *Johns. Rep.* 109, 427. If persons be joined as defendants, where they should not be, advantage may be taken of the misjoinder on the trial, under the general issue. *Arch. C. P.* 78. Now, the article of agreement was not evidence to charge *App*, because it did not prove that money had come to his hands; and, it was not evidence to charge *Kleppinger*, not only

(App and another, Executors of App, *v.* Dreisbach.)

for that reason, but because he was not a party to it. The only mode in which a recovery could have been had upon the agreement, was by an action against *App* alone, under a declaration specially setting forth the facts. In *Jordan* v. *Cooper*, 3 *Serg. & Rawle*, 564, the court insisted on the necessity of a concordance between the *allegata* and *probata*, as being among the land marks of the law. Although this action is brought against the defendants nominally, as executors, the judgment is *de bonis propriis*.

2. The objection to the admission in evidence, of the copy of the administration account settled before the register, by *Frederick App*, depends in part upon the same principles. It was not evidence of a joint liability, *Kleppinger* not having joined in the settlement. But it was liable to further objection, because it was a mere copy of an account settled before the register, and not a decree of the Orphans' Court, and there was no evidence that it had been confirmed.

3. In leaving the construction of the agreement and will, to the jury, the court below was clearly wrong. *Welsh* v. *Dusar*, 3 *Binn.* 337. *Moore* v. *Miller*, 4 *Serg. & Rawle*, 279. *Vincent* v. *The Lessee of Huff*, 8 *Serg. & Rawle*, 381. *Roth* v. *Miller*, 15 *Serg. & Rawle*, 100.

4. The court below erred in their answers to the *second* point of the plaintiff, and the *fourth* of the defendants, in regard to the law, where a testator makes his debtor his executor, and as to the manner in which the executor is liable. In *Pennsylvania*, the appointment by a testator, of his debtor to be his executor, is a release of the debt. This is shown to be the law, by the cases of *Hostetter* v. *Kauffman*, 11 *Serg. & Rawle*, 146, and *Griffith* y. *Chew*, 8 *Serg. & Rawle*, 32. It is true, that where there is a court of chancery, he may be made responsible there, but there only. He cannot be made to answer in an action at law. We have no Court of Chancery, but we have an Orphans' Court with chancery jurisdiction, and the remedy of the one, and the responsibility of the other, are in that tribunal, and so it should be. That court, sitting as a court of equity, may so mould its proceedings, as to do speedy and substantial justice between the parties, which cannot be attained in a civil action. Admitting, however, the liability of the executor to creditors, it by no means follows, that he is also liable to legatees. *Co. Litt.* 364, b. *No.* 209, (1.)

The settlement and confirmation of the administration account by the Orphans' Court, was conclusive. It is true, there are some decisions in this state, which go to establish a different doctrine, but the case of *M'Pherson* v. *Cunliffe*, 11 *Serg. & Rawle*, 422, in which the subject was fully considered, overrules them all. The principles which governed that case, are in perfect accordance with the established rule, that the judgment of a court of competent jurisdiction, directly on the point, is a plea in bar, or as evidence, conclusive upon the same matter directly in question, in another court. In the later cases, of *The President of the Orphans' Court of*

(App and another, Executors of App, *v.* Dreisbach.)

*Dauphin County, for the use of Groff* v. *Groff,* 14 *Serg. & Rawle,* 181, and *M'Fadden* v. *Geddis,* 17 *Serg. & Rawle,* 336, the doctrine has been fully confirmed by this court, and placed upon a basis not to be shaken; and it is no inconsiderable addition to its support, that it is the doctrine of the Circuit Court of this district. *Blount* v. *Darrach,* 4 *Wash. C. C. Rep.* 657. There is nothing unreasonable in making such a decree conclusive. The accounts are regularly advertised; the parties have an opportunity of contesting them; an appeal is open to the highest tribunal, and if the party complaining has neglected these opportunities of redress, the fault is his own. If another position, attempted to be supported on the opposite side be true, viz. that the statute of limitations does not apply to a case of this nature, it is an additional reason why the decree should be conclusive; for if it be not, an account would be liable to be overruled at any subsequent period, where the means of showing its correctness have been lost.

5. In that part of the charge which related to the statute of limitations, the court below erred. The abstract principle, that the plea of *non assumpsit infra sex annos,* does not apply to cases of legacy or trust, was laid down as applicable to this case, the circumstances of which make it an exception to the rule. The will was proved on the 5th of *May,* 1809. On the 6th of *May,* 1813, the account was settled, which was notice to all interested. On the 11th of *November,* 1815, a receipt was given for the balance, and on the same day, a receipt for *Eyerly's* debt, which was supposed to be lost. This suit was brought on the 22d of *March,* 1823. Can it be said, that after the 11th of *November,* 1815, when the account was settled, and the balance paid, there was any holding in trust? By the settlement of his account, the executor declared, that he did not owe the estate the two hundred pounds in question, and from that time, his holding was adverse. If so, the statute does apply; but if it does not, still the court laid down the law too broadly. The old rule, that trusts are not within the statute of limitations, was adopted in *England,* at a period, when at law it was considered an unconscionable plea. It is now treated with much more indulgence, and the rule of the present day is, that though courts of equity are not within the words, they are within the spirit and meaning of the statute of limitations, or, in the language of the late Chief Justice TILGHMAN, in *Wallace* v. *Duffield,* 2 *Serg. & Rawle,* 527, " trusts are not strictly within the act of limitations; but equity has wisely adopted the principle of the act." But the plaintiff's replication showed no fact to take the case out of the statute. It contained no allegation of trust or fraud. The issue was upon the receipt, and withholding the money wrongfully, not fraudulently; and to such a case the statute applies. In *Durdon* v. *Gaskill,* 2 *Yeates,* 268, the issue was upon fraud and concealment.

6. The instruction to the jury, that the plaintiff could not be compelled to bring the amount advanced to his wife into account, as

(App and another, Executor of App, *v.* Dreisbach.)

there was a will disposing of all the property of the testator, was likewise erroneous. From the terms of the will, it is evident, the intention of the testator was, that all his children should be made equal, and for that reason, he gave *Leonard Hisley* fifty pounds in advance. He directs *Frederick App* to account for the two hundred pounds, as part of his portion, and then directs his remaining property to be divided among his children as equally as possible. If it was his intention, that all should be equal, the plaintiff cannot recover a full share without regard to what he has already received.

7. This is an action for a legacy, and the judgment is *de bonis propriis.* The plaintiff declares on the personal *assumpsit* of the executors. In an action *ex contractu,* against several, it must appear, and be proved, that the contract was joint, or the plaintiff must fail. *Rush* v. *Good,* 14 *Serg. & Rawle,* 226. 1 *Chitty Pl.* 31. 19 *Johns. Rep.* 109, 427. *Riddle* v. *Stevens,* 2 *Serg. & Rawle,* 537. It is true, that where executors are sued on a contract of the testator, all must be joined, and here is the distinction. In that case, if one executor has no assets, and pleads *plene administravit,* he is entitled to a verdict. But if this plaintiff succeeds, his execution goes *de bonis propriis,* and the consequence of the direction of the court, of which we complain, is, that a verdict and judgment *de bonis propriis,* have passed against *Kleppinger,* when it is conceded, that he never had any money in his hands, and when the evidence offered and admitted, to charge him, were an agreement, and an account, to neither of which he was a party.

8. This court has laid it down, as a general rule, that to refuse a new trial is not error. But in a case like this, where the finding is so contrary to well settled principles of law, it seems necessary for this court to assume a discretionary power, to do justice between the parties.

*Scott,* for the defendant in error:—

1. The only objection made at the trial to the admission of the article of agreement in evidence, was its irrelevancy to the issues trying. There were two issues. One of the pleas was *non assumpsit infra sex annos,* to which the plaintiff replied, by an allegation of trust in the defendants, who rejoined, that no monies had been received, or were held by them in trust. The agreement was, therefore, proper evidence, under the issue thus created, to show that there were funds. It may have been superfluous, perhaps, as there was no direct plea of *plene administravit,* or want of assets; but the admission of superfluous evidence is not matter of error, if it be connected with the subject in dispute. It was direct and pertinent evidence to charge *App* with two hundred pounds. It was also evidence to charge *Kleppinger. Prima facie,* an executor is chargeable with all the sperate debts of his testator. But it is argued, that *App* had filed an account, which had been confirmed, and thus the plaintiff below was concluded. To this it may be an-

(App and another, Executors of App, *v.* Dreisbach.)

swered, in the first place, that *Kleppinger* had settled no account. There was, therefore, no decree that he should not be charged with the money now claimed.   There are cases in which he would be chargeable.   If it was a debt due to the testator, it was his duty, as executor, to do all in his power to collect it.   Perhaps he could not sue his co-executor, but when his co-executor settled his account, he might, and ought to have appeared in the Orphans' Court, and insisted upon this as an item of charge against him.   An executor is liable for such acts of negligence, or careless administration, as tend to defeat the rights of creditors or legatees.  *Toller*, 426.  So, if he delays bringing suit until the debt is barred by the statute. *Ib.* 427. Perhaps the only mode by which an executor or administrator can compel another to pay his debt, is by charging him with it in the account.  *Simon v. Albright*, 12 *Serg. & Rawle*, 429.  This course he is bound to adopt.   But the settlement of *App's* account was not conclusive, even as respects himself.   The decree was merely, that the balance of the account was just; not, that he should not be chargeable with the sum in question.  The evidence was, therefore, not to contradict the decree.  The question of the conclusiveness of a decree of the Orphans' Court, upon the settlement of an account, is still open, at least, as to its extent.  The old law, undoubtedly was, that it was no more than *prima facie*, to be deemed correct, but might be shown to be otherwise.  This was the doctrine of *Marriot* v. *Davey*, 1 *Dall.* 164.  *Miller* v. *Young*, 2 *Serg. & Rawle*, 518. *Dasher* v. *Leinaweaver*, 3 *Serg. & Rawle*, 200.  *Kohr* v. *Fedderhaff*, 4 *Serg. & Rawle*, 248.   An examination of the cases, which at first may seem to draw that doctrine into question, will produce a different result.  *Huckle* v. *Phillips*, 2 *Serg. & Rawle*, 4. *Bickle* v. *Young*, 3 *Serg. & Rawle*, 234.  *Snyder* v. *Snyder*, 6 *Binn.* 483.  *Selin* v. *Snyder*, 7 *Serg. & Rawle*, 166, and *Kennedy* v. *Wachmuth*, 12 *Serg. & Rawle*, 171, were all cases in which the title to real estate was affected; and the court decided, that the proceedings of the Orphans' Court, on which title depended, were conclusive. *M'Pherson* v. *Cunliff*, 11 *Serg. & Rawle*, 429, went on the same principle.   It was an adjudication *in rem*, and like all other judgments *in rem*, to which the whole world are parties, was conclusive.  This feature belongs to all the cases prior to *M'Fadden* v. *Geddis*, 17 *Serg. & Rawle*, 340.  These cases, therefore, do not apply to a case of this description, which is an action for a legacy, as to which the act of assembly gives to the courts of law peculiar powers.  *Groff's Executors* v. *Groff*, 14 *Serg. & Rawle*, 181, was the case of a decree for the sale of land, and the extent of the decision was, that such a decree should be held valid.

But whatever may be the rule as to a decree confirming a final account, it clearly does not extend to the confirmation of an account not final.  By the settlement of a final account, a previous account, settled and confirmed, is opened.  *Case of M'Grew's Appeal*, 14 *Serg. & Rawle*, 396.  The account settled by *Frederick App*, was

(App and another, Executors of App, *v.* Dreisbach.)

not final. Whether or not the item in dispute would be a fair charge depended on a contingency. No account can be called final, which does not present for investigation, every item which can be brought into view.

2. The observations on the *first* point, being applicable to the subject of the *second* assignment of error, it need not be pursued further.

3. Of the opinion of the court on the question of advancement, the plaintiff in error has no ground of complaint. The court answered this part of the case precisely as they were requested by his counsel, when they replied to his *second* point, and still more strongly in their reply to the *first* proposition of the defendant in error. Besides, a question of advancement may be one of mere law, or of mingled law and fact. If it depends solely on a written instrument, it is a question of law; but that was not the case here, for the judge says, there was parol evidence, and in such a case, it is a question for the jury. The answer of the judge was, in fact, more favourable to the plaintiff in error, than the case justified. In the article of agreement, there is nothing like advancement. It is a contract for the bargain and sale of land. An advancement must be complete in the life time of the testastor. It is an act *inter vivos. Toller,* 380. The expressions in the will, which does not take effect until after death, cannot make that an advancement, which was not so before. They might throw light upon the testator's former intention, and the jury might draw inferences from them, but they could operate no further.

4. To show, that the court below was right in saying, that a debtor is not discharged by being made the executor of his creditor, it is only necessary to refer to *Griffith* v. *Chew,* 8 *Serg. & Rawle,* 17. *Pusey* v. *Clemson,* 9 *Serg. & Rawle,* 204. *Simon* v. *Albright,* 12 *Serg. & Rawle,* 429.

5. It cannot be disputed, that executors and administrators are trustees for creditors, legatees, and next of kin. It is equally indisputable, that a trustee cannot avail himself of the statute of limitations. *Johnston* v. *Humphreys,* 14 *Serg. & Rawle,* 395.

6. There was nothing wrong in the answer of the court below to the plaintiff's *third* proposition. They said, that the suit was correctly brought against the two executors; but added, that if both have not jointly received assets, they are are not jointly liable. The act of assembly of the 21st of *March,* 1772, *Purd. Dig.* 517, seems to require the action to be against all the executors or administrators who act. They may, however, sever in their pleas, and he who has not received money, may show that fact, and be discharged. They may both, or either of them, plead no assets, and the judgment will be accordingly.

The opinion of the court was delivered by

Huston, J.——This was a suit by *Henry Dreisbach,* a son-in-law of

(App and another, Executors of App, *v.* Dreisbach.)

·*Michael App*, against *Frederic App* and *Ludwig Kleppinger*, executors of said *Michael*, under the following circumstances:

The will of *Michael App* was proved 5th *August*, 1809; it contained, among other things, this clause: "I have sold to my son, *Frederick App*, a piece of land situate in *Lehigh* township, as per agreement made and executed the 18th *November*, 1780, for the sum of three hundred pounds. One hundred pounds have been paid to me by my son. The other two hundred pounds shall be settled with him after my decease, on account of his portion." Then followed a bequest of fifty pounds to one child, to make it equal to what each of the others had received, and he adds, "It is further my will that all the rest of my property shall be sold and equally divided, as much as possible, among my four children."

There was then given in evidence the article of agreement above referred to, and a bill of exceptions to the admission of it was taken; but why said exception was taken, we were not told: also, the plaintiff gave in evidence the settlement of an administration account by the defendant, as executor, on the 8th of *May*, 1813. The defendant showed that this account was confirmed by the Orphans' Court in *June* following, and the balance in the hands of the executor ordered for distribution. In this account, mention is made of this sum of two hundred pounds from the son to his father, but that it was not put in the inventory, nor charged to the executor.

In *November*, 1815, *Henry Dreisbach* gave a receipt in full for the sums awarded by the Orphans' Court to him. In 1823, this suit was brought, on the ground that the sum of two hundred pounds before mentioned in the will was a debt due from *Frederick*, for which he ought to have settled in the account of his executorship, and parol evidence was given on both sides, as to what was the intention of the father, and the understanding between him and his son, as to its being an advancement to the son.

The declaration contained two counts. The first stated the will, death of testator, letters testamentary to the executors, and without taking notice of the settlement of their accounts, or of the sum ordered for distribution, charged that there remained in the hands of the executors, seven hundred and nine dollars and sixty-three cents, beyond all debts, funeral expenses and specific legacies, one fourth of which the plaintiff below claimed, &c. The second count charged them, as executors, for money had and received. Several points were embraced in the discussion of this cause, which are not necessarily to be decided at this time. It was contended that on the proof in this case there could be no recovery, because no money was received, or alleged to have been received, by either of the defendants. I incline, however, to the opinion that, in some way, an executor who is indebted to the estate of his testator, can be reached, as having the money in his hands. In *Wilson* v. *Wilson*, 3 *Binn.* 557, a distributive share found on settlement of the account in the Orphans' Court to be in the hands of the executors, and un-

(App and another, Executors of App, *v.* Dreisbach.)

disposed of by the will, was recovered in *assumpsit*, though the court was divided.   The first section of the act of 1713, establishing our Orphans' Court, speaks of recovering at common law the sum found, on settlement, to be in the hands of the executors, or administrators.   I do not know that any precise form of action has been established.   The act of *April*, 1823, allows transcripts of the settlement of such accounts to be filed in the Common Pleas, and actions of debt, or *Scire Facias*, to be sued on them.

This suit is not for a balance found on a settlement of the amount in the Orphans' Court, but for a sum decided in the Orphans' Court not to be due.   It is, in effect, an appeal from the decree of the Orphans' Court, not formally and according to law, but an attempt to overrule it in another court.   This matter has been before us repeatedly, and would seem to be settled to a certain extent, viz. as to the items set out in the account, as settled, and directly acted on by the court.   How far an account settled before the act of 1819, or even since that act, may be held conclusive as to matters concealed by the executor, administrator or guardian, at the time of settlement, and equally unknown to the court, and those interested, it is not necessary now to state.

Another ground taken was, that if there could be a recovery against *Frederick App*, one of the executors, who was alleged to be debtor to the estate, yet there could be no recovery against *Kleppinger*, the other executor, who had nothing in his hands, and who had no power to sue his co-executor.   The judge told the jury so expressly.   Perhaps, however, *Kleppinger* was himself in fault; he ought to have pleaded separately; and if the plea of *plene administravit* had been found for him, he was safe.   "In an action against executors, though the plaintiff may fail as to one, on the plea of *plene administravit*, he may recover against the other. 1 *Chitty Pl.* 353, 6.  2 *Tidd's Practice*, 1023.

This was nothing more nor less than a suit for a legacy.   Where an act has given a remedy at law where there was none before, as was perhaps the case here, that remedy ought to be followed. Where that act, or another one says, that remedy alone shall be pursued, it must be followed.   The act of the 21st of *March*, 1772, gives the legatee an action on the case, debt, detinue, or account render, as the case may require.   By action on the case, I would understand an action stating the case as in the first count here, with the addition of stating the decree.   It has been said, before the law of 1806, that *assumpsit* did not lie for a legacy: since that act I can have no doubt.   The act of assembly gives, in the third section, a power to appoint auditors, on the plea of want of assets, but not to ascertain the amount of a residuary legacy; and I would say that a residuary legatee must compel the executors to a settlement in the Orphans' Court, and thus ascertain the amount, or must bring account render, in which a statement of all assets will be exhibited; otherwise, different legatees, entitled to equal parts of the residue,

may recover very unequal sums, and the executors may be put to intolerable trouble, in proving their whole administration in each suit.

The executors pleaded the statute of limitations. The court decided that it did not apply to this case, being a trust, &c.

That the statute of limitations does not apply in cases of trust, or cases of fraud, is an assertion to be found in every law-book, and many decisions, not reconcileable with each other, are in the reports of different courts. The labour and the discrimination of the different courts of *New York,* have saved the profession much trouble on this subject. In *Decouche* v. *Savetior,* 3 *Johns. Ch.* 216, 217, this matter came before Chancellor KENT. He there seemed to adopt the broad principle that, in all cases of direct and express trust, the statute did not apply. The matter was again before him, and was again considered, in 5 *Johns. Ch.* 522. *Coster* v. *Murray,* and lastly, in 7 *Johns. Ch.* 90. *Kane* v. *Bloodgood.* In this last case, he retracts the position taken in the former, and says every deposite is a direct trust; every person who receives money to be paid to another, or to be applied to a particular purpose, is a trustee. The cases of hirer and letter to hire, borrower and lender, pawner and pawnee, principal and agent, are all cases of express trust; yet such cases are not taken out of the operation of the statute of limitations, when sued at law, and ought not to be, and are not, by the better decisions in chancery, and he comes to the conclusion that the trusts not to be affected by the statute in chancery, are those technical and continuing trusts which are not cognizable at law, but which fall within the peculiar and exclusive jurisdiction of chancery. I shall not go over all the cases which his research has collected, but content myself with citing those which he has cited, as establishing the law on the best and most reasonable foundations in *England,* and which are adopted by him.

*Precedents in Chancery* 518, *Lockey* v. *Lockey.* This was a bill for an account of the profits of an estate received while the plaintiff was an infant, but not brought until more than six years after the plaintiff came of age. The plea of the statute of limitations was allowed, as much as it would be in an action of account at common law; if the infant lies by for six years after he is of age, he is bound at law, and so he shall be in the Court of Chancery. There was no necessity to apply to that court, and *no sort of difference in reason between the two cases.*

In *Prince* v. *Heylin,* 1 *Atk.* 493, Lord HARDWICKE held the statute was a bar in chancery, as well as at law, to any demand from one tenant in common against another, for an account, further back than six years.

In *Sturt* v. *Mellish,* 2 *Atk.* 612, *Villa Real* had been appointed attorney, to demand and receive money from the government of *Portugal.* A bill was filed against the executor of *Villa Real* for an account. The statute of limitations was pleaded, and

(App and another, Executors of App, *v.* Dreisbach.)

held a bar. " A trust is such a confidence between the parties, that no action will lie at law, but is merely a case for the consideration of chancery; every bailment might as well be called a trust as this."

In *Smith* v. *Clay*, 3 *Bro. Ch.* 639, (*note*,) Lord CAMDEN says: "As often as parliament has limited the time of actions and remedies at law, the Courts of Chancery have adopted that rule, and applied it to similar cases in equity."

Chancellor KENT follows the decisions down to the present time, and adopts, as the result of them, and as the true rule, that,—if a party has a remedy at law, and, instead of bringing his action, lies by, and then resorts to equity, he is bound wherever he would have been at law.

This matter came before the Court for the revision of Errors in *New York*, and the doctrines above stated were fully recognised.

Chief Justice SPENCER says, (20 *Johns. Rep.* 585) "It is impossible, in a case like this, where there was ample remedy at law, that the change of the process should produce such a change in the rights of the party." And again: " I have no hesitation in saying that, in a case where there is a concurrent jurisdiction in the courts of law and of equity, the rule must be the same, and the statute of limitations may be pleaded with the same effect in the one court as in the other."

In this state we have no Court of Chancery: all our remedies are at law, and sought for by action. Our statute of limitations says, all actions of, &c. &c. shall be brought within the following time and limitation, and not afterwards—and then specifies the time for different forms of action. We have adopted certain rules by analogy, as to forms of action not specified, and we have supposed certain cases of trust to be within the exceptions adopted in courts of chancery, where such courts exist. Courts of chancery, and the proceedings in them, are not mentioned in the statute of limitations in *England* and *New York*. Not being within the letter of the law, they have yet, as I have shown, conformed to the law, in all cases where the remedy might have been at law. All our remedies are at law, and must be at law, in most cases. I do not, however, say we have no cases not within the statute of limitations; practice seems to have settled it otherwise.

Our Orphans' Courts have chancery powers. An executor, or administrator, is a trustee for creditors and for next of kin, or legatees; but when he has filed and settled his account, if there is a balance in his hands, perhaps he ceases to be a trustee, and becomes a debtor for that balance from the time of the settlement. The settlement may be made a judgment, by filing it in the office of the prothonotary of the Common Pleas. Perhaps it must, to preserve its lien, be revived every five years; at all events, it would be considered as satisfied in twenty years, if there should be no proceedings on it. It is not, then, one of those trusts which would last for ever.

(App and another, Executors of App, *v.* Dreisbach.)

The demand, in this case, is not for a sum appearing due on a settlement in the Orphans' Court. It is for a sum charged to be due, but denied now, and denied at the settlement; due, if at all, from a man who, though acting in the character of a trustee at one time, put off that character openly, by record, and according to law, ten years before this suit was brought. If he is, or ever was, a trustee for the sum demanded, he is not made so by the will, or the article of agreement, or by any writing; for the opinion of the court was, that, on the written testimony, this sum was an advancement. If a trustee at all, he is made so by parol testimony, and evidence extrinsic the will and the letters testamentary. Against him there was always a remedy by appeal from the decree of the Orphans' Court, or by action at law. If he is a trustee at all, he is not so in a sense which would take from him the protection of a chancery statute of limitations, where they have a Court of Equity. It therefore must protect him here.

Something was said of want of notice to *Driesbach* of this settlement. In point of fact, he had actual notice, for he received and gave a receipt for the sum due by the decree of the Orphans' Court, in 1815; and this suit was brought seven years after; but I do not rely on this. The notice given, agreeably to the rules of the court, and more especially by direction of the acts of assembly, must have the same effect as actual notice, and bind equally. We have many laws directing notice to be given by advertisement, &c.; so they have in all countries; and we hear too much in court about hardship, for want of actual notice. The notice directed by law must be good and effectual, and we ought not to hear any complaints on that subject.

There was no fraud—no concealment—the executor stated explicitly the sum referred to in the will and article, and said he was not chargeable. To call on him, after twenty years from his father's death, and ten years from his settlement, to enter into a contest to reverse his settlement on parol proof, would be hard, if the law permitted it. Many of those who knew about it must be dead.

The court, then, ought to have told the jury, that, whatever may be the case as to matters left out of an administrator's account, concealed, or kept back, yet, as to this item, inserted, acted on, and the balance received, the account was conclusive; and that, by the settlement of the account in due form of law, and payment of the balance, the executors ceased to be trustees; or, if they are so, are only such by extrinsic proof: that there was a full remedy at law, the same in 1813 as now; that their case was within the letter and spirit of the statute of limitations: that they were not such creatures of a Court of Equity, as that there was no remedy at law, and that the statute would be a protection against a bill in a Court of Chancery.

The principles above stated, as to the statute of limitations in cases of trust, will be found recognised by Judge WASHINGTON,

(App and another, Executors of App, *v.* Dreisbach.)

*C. C. Rep.* 631, *Wisner* v. *Barnet and others;* and was adopted in cases analogous, in *Pipher* v. *Lodge*, 4 *Serg. & Rawle*, 316, and in *Brown* v. *M'Coy*, which was this: *Brown* and *M'Coy* were tenants in common by agreement, and payment of equal parts of the price. *M'Coy* was in possession and died. His children entered, and occupied it as their own; in fact, they never heard of the claim of *Brown.* I held, that twenty-one years barred the claim of *Brown*, and the Supreme Court affirmed the judgment.

Judgment reversed, and a *venire facias de novo* awarded.