KEECH *v.* RINEHART.

</div>

A settlement of an administration account in which the administrator claims credit for a certain sum retained for the use of A., one of the distributees of an estate of which his intestate was administrator, is some evidence that A. was then living, to rebut the presumption of her death arising from her absence unheard from for seven years.

So of the sheriff's return to proceedings in partition, in the Orphans' Court, by a co-heir of A., who was there named as one of the heirs, certifying that the parties were severally warned.

IN error from the Common Pleas of Chester.

*April* 11. Assumpsit. The plaintiff was the administrator of Esther Frain, who was a daughter of Rinehart Gunsenhauser. John Rinehart administered to his estate, and died. The defendants were administrators of the administrators of John Rinehart, who had settled his administration account in the Orphans' Court, which was confirmed in 1825. In this account they claimed credit for a certain sum retained by their intestate, " out of the estate of Rinehart Gunsenhauser, for the use of Esther Frain, a daughter of said Rinehart Gunsenhauser."

It was also in evidence that proceedings had been instituted in the Orphans' Court, by one of the heirs of Rinehart Gunsenhauser, for the partition of his real estate, and that Esther Frain was there stated to be one of the heirs. The sheriff's return certified "that the parties were severally warned."

It was also proved that the amount retained for Esther Frain had been received by the defendants, and had not been paid away.

The defendants proved that Rinehart Gunsenhauser died in 1800, and that Esther Frain had removed from the state about 1788, and had never been heard from since.

The court (CHAPMAN, P. J.) instructed the jury, there was no evidence to rebut the presumption of her death before her father, arising from her absence for seven years, unheard from.

*Lewis*, for plaintiff in error.—The evidence arising from the account was record evidence, as the decree of the court, that Esther Frain was then living, and cannot be rebutted by parol: 1 Raw. 361; 2 W. 261; 6 W. & S. 201. By it the defendants are now estopped from asserting the contrary: 4 Barr, 195; 2 Phil. Ev. 202–5; 11 S. & R. 428. But, at all events, the facts proved were some evidence to rebut this lightest of all presumptions, particularly against one bound to pay the money, and who thus sets up a mere technical objection.

*Pyle* and *Darlington*, contrà.—The decree was not on the point, and therefore established nothing. It is at best an admission. But of what? Not that she was living, but that she or her representatives were entitled to the fund. If arising from the sale of land, as this did, her administrator is not entitled; for she died before her father, and her heirs, or those of her father, would be entitled. These decrees are no evidence on these points: 7 S. & R. 30, 483; 17 Ib. 37; 2 W. 214; 6 W. & S. 200; 12 S. & R. 175; 8 W. 255; 2 Barr, 470, 422; 4 Ib. 222; 4 W. & S. 232.

*April* 19. BELL, J.—It seems to have been conceded, on the trial, that if the plaintiff's intestate died before her father, there could be no recovery. The date of her death and the character of the evidence to establish it, were, therefore, the only contested points. The legal presumption of death, springing from continued absence, was, as a general rule, correctly stated by the court below. But, while he conceded that it might be controlled and modified, or, altogether, rebutted by proof of independent inconsistent facts, the president of the Common Pleas instructed the jury there was nothing in the plaintiff's evidence to rebut the presumption of the intestate's death during the lifetime of her father, and, consequently, the verdict must be for the defendants. The case was thus wholly taken from the jury, and rightly so, if the judge's view be correct. But, if there was any proof tending, though even slightly, to show that the death of Mrs. Frain occurred subse-

quently to her father's demise, it must be agreed an error was committed.

In April, 1825, the defendant's intestate and Isaac Rinehart filed their account as administrators of John Rinehart's estate, and therein claimed a credit for $326.08, retained by *their* intestate for the use of Esther Frain and Mary Beeder, two of the daughters of Rinehart Gunsenhauser, deceased, of whose estate John Rinehart had been administrator. This account ascertained in the hands of the accountants, a balance due to the estate they represented, amounting to $1,666.23½. It was allowed and confirmed by the proper Orphans' Court, on the 5th of May, 1825. The plaintiff contends that this certificate, being the decree of a court of competent jurisdiction directly upon the account, is conclusive of all the matters contained in it, and, consequently, the defendants are estopped to deny the continued existence of Mrs. Frain to a period, at least, as late as the year 1825. But this position is entirely untenable. That the decree of an Orphans' Court is, like a judgment of other courts of record, conclusive of all matters of which the court had jurisdiction, and upon which it directly acted, is now recognised as an indisputable elementary principle: McFadden *v.* Geddis, 17 S. & R. 339; McLanachan *v.* The Comth. 1 R. 357; App *v.* Driesbach, 2 R. 301. But it has never been pretended the confirmation of an administration account is conclusive of every matter contained in it, or that it is to be accepted as settling every question that may arise upon the items incidentally introduced into it. The primary object proposed by the settlement of such an account, particularly where it is a final one, is to ascertain the nett balance of the administered estate remaining in the hands of the accountant. For this purpose, charges are made and credits claimed, affecting the interests of third persons, where it is only of consequence to fix the amounts to be charged or credited. As these parties are never called in nor heard, on the simple question of a confirmation *nisi*, the court never, in fact, attempts to pass upon the entries which incidentally refer to them: Rittenhouse *v.* Levering, 6 W. & S. 201–2. It has, therefore, been truly said that the only effect of a simple confirmation is to show the balance in the executor's hands after payment of debts and charges, (Foulk *v.* Brown, 2 W. 214), unless the particular item has been expressly litigated and adjudicated: Clark *v.* Callaghan, 2 W. 259. It can, consequently, have no binding effect upon questions which did not arise in stating and confirming the account, for these cannot be regarded as passed on by the court. Thus, it will not

protect the accountant from answering for a *devastavit*, where there has been a misapplication, though credit be regularly claimed and allowed, (Pry's App. 8 W. 254); nor preclude one charged as a debtor from showing it to be contrary to the fact (Rittenhouse *v.* Levering, *supra*); nor a creditor from controverting an assertion of payment, introduced as a claim of credit; nor a legatee from agitating the amount due to him (Foulk *v.* Brown, *supra*); nor a distributee from disputing the credit claimed for a sum, asserted to have been paid him on account (McLanachan *v.* Comth. 1 R. 359); nor will it bar the claim of a widow to a distributive share of her father's estate, because of a credit allowed for payment of her husband's debt, on account, as alleged, of her share: Flory *v.* Becker, 2 Barr, 470. These illustrations of the restricted effect of a simple decree of confirmation might, if necessary, be much extended. What has been given will, it is conceived, amply suffice to show that the quality of conclusiveness cannot be ascribed to the entry upon which the plaintiff relies.

But, there is an additional answer to his position. It was not within the province of the Orphans' Court, when adjudicating in respect to John Rinehart's estate, to decree in whom resided the ownership of the fund, retained by him as administrator of Rinehart Gunsenhauser's estate. These were distinct and independent subjects, relating to different parties and interests. The object of the decree of confirmation was not to distribute the estate of the the latter, but to settle that of the former. The design of the administrators in introducing the item of credit here in question, was to effect this, by a simple deduction of the sum derived from one estate, from the general fund belonging to the other. Thus, a distributable balance was ascertained. It was, in reality, nothing more than an acknowledgment of a debt due from the estate in course of administration, to fix its value, so far as this could, incidentally, be done. But the court was powerless, as the proceeding then stood before it, to ascertain, definitively, either the amount due, or to whom it is due: Foulk *v.* Brown, *supra;* McCullough *v.* Montgomery, 7 S. & R. 31. Nor does the record exhibit an attempt to exercise such an excess of jurisdiction.

The notion that the averment of ownership in the two daughters closes the defendants' mouths to deny it, is equally groundless. An assertion or denial operates as an estoppel only where it was expressly designed to influence the conduct of another, and did so influence it, and where retraction would operate to the injury of the latter: Gosling *v.* Birnie, 7 Bing. 339; Hawes *v.* Watson, 2 B. &

C. 540; Hall *v.* White, 3 C. & P. 136; Welland *v.* Hathaway, 8 Wend. 483; Dezell *v.* Odell, 3 Hill, 215; Wallis *v.* Truesdell, 6 Pick. 455.   To the idea that the item is to be regarded as a confession made by the accountants, equivalent to a statement under oath, in support of which the plaintiff cites Harrisburg Bank *v.* Tyler, 3 W. & S. 376, it is enough to answer that, as to the principal fact sought to be established by it, it is not a statement in contravention of the interests of the party making it, who, of course, must pay it to some one; and, secondly, it is not an assertion made by persons peculiarly cognisant of the fact.

But, though not conclusive, nor, looking to the probable ignorance of the defendants' intestate on the subject of the disputed fact, perhaps, of much weight, still their assertion, in 1825, that the fund now in dispute was the property of Esther Frain and her sister, is not wholly to be disregarded.   In *this action*, it may be accepted as furnishing some evidence for the consideration of the jury, more especially when considered in connexion with the Orphans' Court record, showing the proceedings had in relation to Rinehart Gunsenhauser's real estate.   The petition of Martin, one of his sons, praying a partition or valuation, avers that the father left to survive him, twelve children, of whom Esther Frain and Mary Beeder were two.   The sheriff, on the return of the inquisition, certified he had warned all the parties to be present, as was his duty, if within his bailiwick.   After this, a rule upon the heirs issued, which, being returned with proof of service, a sale was ordered to be made by the administrators.   These proceedings were had in the years 1804 and 1805.   Though, from the known laxity of practice which then prevailed in our Orphans' Courts, a jury might not be disposed to accept them as absolute proof of the facts asserted and taken by the court as true, it will not do to say they afford no evidence whatever.   They contain, at least, the assertions of members of the family, made in the course of a judicial proceeding, and pertinent to the subject then in hand.   What weight a jury may be disposed to accord to them, as showing Mrs. Train outlived her father, it is not for us to say.   It is sufficient for our purpose that they furnished some evidence of the disputed fact, upon which a verdict might have been founded.   The court said there was none such.   In this consists the sole error committed, and for this the judgment must be reversed.

Judgment reversed, and a *venire de novo* awarded.