## BARNEY *v.* CHITTENDEN, *et al.*

The conclusive effect of the judgment of partition of the half-breed lands, as established by *Wright* v. *Marsh, Lee* and *Delavan.*

A majority of the trustees, under the articles of association, of the New York Company, have power to convey the title of said company to lands in the "half-breed tract," and the conveyance may be made by themselves, or by their attorney.

Where it appears to the court, that no person interested intends to object to the probate of a will, it may be granted upon the testimony of one subscribing witness.

The probate court, though limited and inferior in power, had complete original jurisdiction in administering the estates of decedents; and any judgment, order, or decree, upon a subject matter, and between parties over which the court had jurisdiction, cannot be collaterally questioned.

It will not not be presumed, that the probate of a will was granted without sufficient proof, nor that letters testamentary were issued without the bond required by law.

### *Error to Lee District Court.*

*Opinion by* WILLIAMS, C. J.    This is an action of right, commenced in the district court of Lee county by John McKean, against John C. Barney, to recover the possession of a tract of land described as the west half of the south west quarter of section thirteen, in township sixty-five north, of range five west in said county, which he claimed in fee simple.   The suit is instituted for the immediate possession, and damages for detention of the premises.   On the 16th day of October, 1846, John C. Barney appeared and filed his plea denying the right of McKean, and issue was joined.   On the tenth day of June, 1847, the death of John McKean the plaintiff was suggested and his executors, A. B. Chittenden and Wm. F. Telford were substituted and entered as parties to the suit. The cause was tried at November term, 1848, and a verdict and judgment thereon for the plaintiffs.   It is now here upon a writ of error, and the following are the assignments :

1. The court erred in admitting in evidence, the books

containing the record of partition, as evidence of legal title in Marsh, Lee & Delavan to the property in question.

2. In admitting the power of attorney from Marsh, Lee & Delavan to D. W. Kilbourne, and the deed from Marsh, Lee & Delavan by D. W. Kilbourne to John McKean.

3. In admitting the will of John McKean, deceased, the probate thereof, and letters testamentary as set forth in said bill of exceptions, as evidence of legal title in said plaintiffs below.

4. The court erred in excluding the proof offered, and the instructions asked by defendant below, as contained and set forth in said bill of exceptions; and in refusing to rule out the record of partition, on the ground that part of said tract at the time of partition, was situated in another county.

Chittenden & Telford, executors of John McKean deceased, the plaintiffs, claim the land by virtue of purchase and a deed of conveyance from Marsh, Lee & Delavan, trustees of the New York Land Company, by David W. Kilbourne their attorney. On the trial, the plaintiffs offered in evidence, the treaty of the 4th of August, 1824, between the United States and the Sac and Fox Indians, and the act of Congress of the 30th of June, 1834, entitled "An act to relinquish the reversionary interest of the United States, in a certain Indian reservation lying between the rivers Mississippi and Des Moines." And then offered to read in evidence, from two books produced by the clerk of this court, as of record in his office, among the proceedings and judgments of the district court in this county, under the territorial government, and bearing the signature of the territorial judge, record of certain proceedings partitioning the "half breed tract" among the owners, but offered no other evidence than what was furnished by these circumstances, of the genuineness or authenticity of the records, or that the books were what they purported to be, or that they were found in the proper depository.

To the admission of this evidence, the counsel for the

Barney v. Chittenden.

defendant objected. This objection was overruled by the court, and the evidence read to the jury.

By the treaty made between the United States and the Sac and Fox tribes of Indians, on the fourth of August, 1824, a large and valuable tract of country lying between the Des Moines and the Mississippi rivers, was reserved for the half breeds of the Sac and Fox tribe of Indians. By an act of Congress passed the 30th of June, 1834, the reversionary interest of the United States in this land, was relinquished so as to vest the fee simple title to them, in the half breeds aforesaid. The treaty and act of Congress both speak of them as a class of people, known as "half breeds," without naming them individually. Josiah Spalding and others, who claimed to be the owners by purchase, of shares or undivided interests in these half breed lands, on the 14th day of April, A. D. 1840, filed their petition for the partition of these lands among the owners thereof. The petition sets forth, that the tract contains about one hundred and nineteen thousand acres more or less. The names of claimants are set forth in the petition, claiming twenty-three and one third shares, to which they claim the title in fee simple.

This proceeding for partition, was commenced and conducted to judgment under the general partition law of the territory. In the case of *Mitchell D. Wright* v. *Marsh, Lee & Delavan*, (a) this court has decided the question of the legal effect of the judgment in partition. It is, therefore not necessary here to consider that question. It is sufficient to say, that the jurisdiction of the court, and the validity of the judgment of the district court of Lee county, partitioning the land among the owners therein named, have been established and fixed for all the purposes of this case, by that decision.

The effect of the proceeding in partition, under the statute, in imparting title to the holders of shares under the judgment, is also established by the same decision.

(a) Ante 94.

As the first assignment of error is disposed of, we will proceed to consider the questions involved in the second.

The judgment in partition shows that the land in dispute is a portion of the "half breed tract," which fell among the shares of Marsh, Lee & Delavan, as trustees of the New York Company. John McKean in his lifetime held the land in question by virtue of a deed of conveyance from David W. Kilbourne, who made and executed it, as the attorney of Marsh, Lee & Delavan, trustees of the New York Company, which deed together with the power of attorney, and the articles of association of that company, were offered and read in evidence to the jury by the plaintiff. To this evidence, the defendants' counsel objected. The objection was overruled and exception taken. It is contended, that the conveyance from Marsh, Lee & Delavan by Kilbourne their attorney, to McKean is of no effect, because by the articles of association of the company, less than the whole number of trustees could not convey title to their lands; whereas, in this case, but three of the trustees make the deed, by their attorney. The power of the three trustees, Marsh, Lee & Delavan, to convey the title to the land by attorney or otherwise, is denied.

By reference to the judgment in partition, apportioning the "half breed tract" among the owners, we find that the interest or shares of the New York Company, were set-off to and vested in Marsh, Lee & Delavan in trust, for the members thereof, without naming any other persons as trustees. The two other trustees, Aikin and Galland, originally named in the articles of association with them, are not recognized in the proceeding in partition, or the judgment. The partition law of this state, under which this land was divided among the owners, provides for the establishment of the interest or titles of the several claimants by evidence and trial by jury, unless the parties to the proceeding shall otherwise agree, and that when the various interests or shares shall be so ascertained, judgment

shall be rendered confirming them, and that partition be made accordingly.   *Rev. Stat.*, 461, §§16, 17, 18, 19.

This judgment in partition, had the effect of establishing title, to these lands, in those whose interests were then passed upon and adjudicated.   Such has been the decision of this court, in the case of *Wright* v. *Marsh, Lee & Delavan*, decided at this term.   The New York Company then being the owners of that portion of the "half breed tract," which was set-off to them by the judgment in partition, might dispose of it, in accordance with the provisions of their articles of association.   We do not deem it necessary here, to enquire how or why only three of the trustees of the company, of the five named in the articles of association, are made parties in the judgment of partition, as trustees, to whom by the decision of the court, the interests of the persons composing that company are committed.   The articles of association properly construed, must solve the question here raised.   Then, had a majority of the trustees a right to contract for the sale of the company's land, and make a title to the purchaser?   And if so, could such majority empower an attorney to make such contract, and impart the title to the land?

It is contended for the plaintiff in error, that to enable the trustees to sell and convey the title in fee simple to McKean, that all should have joined in the act, and that as only three out of the five have done so, therefore the deed is void and conveys no title.   To sustain this position, the articles of association are referred to.

In order to a proper decision of this question, it is necessary to examine into the object of the association, and fairly ascertain the intention of the parties, as expressed in their articles.   They were entered into, on the 22d day of October, 1836, by Joshua Aiken, Isaac Galland, Samuel Marsh, Benjamin F. Lee, William E. Lee, George P. Shipman, Henry Seymour, Edward C. Delavan and Erastus Corning to purchase certain lands situated between the Des Moines and Mississippi rivers, then in Wisconsin territory, part of the tract of land known as the "half

breed tract." After setting forth the nature of the tenure by which the parties were to hold the lands purchased, the extent of the investment of capital, &c., in order the better to enable them to manage the property, &c., among other things it is provided, that the title to all the land purchased for the use of the company shall be conveyed to and vested in the trustees, viz: Joshua Aikin, Isaac Galland, Samuel Marsh, William E. Lee and Edward C. Delavan as joint tenants, and not as tenants in common in trust for the persons and parties interested therein. The proportions in interest of each of the parties are fixed; and then the third principal division of the agreement, or article, proceeds to provide for the trustees, their powers in the following terms: "*Thirdly*, And the parties hereto covenant and agree, that the said trustees, or a majority of them, shall have power, and it shall be their duty,

1. To cause the title to said lands and property, to be thoroughly examined and established, in such form of proceeding as they may be advised to be proper, to protect the parties in interest against any loss or question on account thereof.

"2. To cause the land purchased to be surveyed, so that the exact quantity of land acquired by the parties hereto, by the purchases already made, or hereafter to be made as herein provided, shall be ascertained."

"The 3d subdivision directs that they shall cause to be surveyed and laid out, town cites, &c.

The 4th subdivision of the third article, then is as follows: "And the said trustees are hereby authorized to sell and convey from time to time, as they may find opportunity, any part of the lands so purchased, on such terms as to payment, and to take such securities for the purchase money or any part thereof, as they shall think fit."

The 5th subdivision of the same article, is as follows: "And the trustees or a majority of them are also authorized *to make all contracts, and do all lawful things* and acts that may be necessary or proper, to carry into effect

the objects of this agreement, and to promote the interests of the parties concerned, in respect to the property purchased and every part thereof."

The sixth and last subdivision of this third article, provides for the appointing of attorneys, clerks, &c.

The succeeding articles provide for the management of the lands, and among other things, for their sale and the manner in which the avails in money, are to be applied for the benefit of the parties.

Taking these articles together, we find no difficulty in ascertaining the intent of the parties in reference to the power given to the trustees, and the manner in which that power was to be exercised in acquiring, managing and disposing of the lands. To supercede the necessity of all the parties to the agreement of association, acting in the conducting of the business of the company, with a view to convenience and economy, five trustees were named and duly appointed to act for the whole of the parties interested. By express terms they are to receive, hold, and impart title to the lands for the use and in trust for the company.

The third article designates the powers of the trustees, and taken in connexion with the other portions of the agreement, there can be no doubt that it was intended that their power should be plenary, in the purchase, management and disposal of the lands by the act of the majority of their number. Any other construction would, we think, thwart the parties in the accomplishment of the design contemplated. Any one of them, objecting to the sale of any portion of the land, would render it impossible, when it expressly provided that they may sell to accomplish the object of association. Taking the whole agreement together, we find no difficulty in coming to the conclusion, that a majority of the trustees had power to impart the title to the plaintiff.

But this question is not left for solution to inference, nor is it left for decision dependent upon rules of construction. The power to sell and convey the title, is expressly given to the trustees, *or a majority of them,* by the third article

or general division of the agreement or articles of association. This is apparent upon an examination of this article. It provides that "the parties mutually covenant and agree that the said trustees or a majority of them, shall have power to do and perform certain acts;" and proceeds to designate and classify them by numbers, from one to six in subdivision. Much stress has been put by the counsel for the plaintiff in error, upon the language of the fourth subdivision of this article. This it is alleged, gives to the whole of the trustees, the power to sell and convey the lands, in terms which are specific, and excludes the idea, that a majority might do so. The language is "And the said trustees are hereby authorized to sell and convey, &c." Taken in proper connexion with the commencement of the article, where it is expressly provided, that "the said trustees or a majority of them, shall have power and it shall be their duty," to do the things specified in the several subdivisions following, of which this is one, we think by a proper observance of the rules of legal construction, as well as those governing the use of language, the words "and the said trustees," will be taken to refer to the trustees as a body, and as set forth in the commencement. This conclusion is sustained by the other parts of the agreement, reasonably and fairly construed in view of the obvious design of the parties in forming the association, and the reasonable use of the means adopted for its accomplishment. But this point is clearly set at rest by the fifth subdivision of this article. The parties to the agreement, after specifying certain things, which the trustees may do, here empowers "the said trustees, *or a majority of them*, to make all contracts, and to do all lawful things and acts necessary or proper to carry into effect the objects of this agreement, &c." This we consider, is designed to give plenary power to the trustees *or a majority of them*, as a board to act for the company.

As we have already said, a different construction of the articles of association would not be warranted by the language used, and would put the parties to the agreement

Barney *v.* Chittenden. .

in the unreasonable position, of using means most likely to prevent the attainment of the object for which the company was formed.

This is not a mere trust to hold the title to lands, for the use and benefit of persons incapable of contracting. The design of the association is to get gain and profit by the purchase and sale of lands. The purposes and object of the association are clearly set forth in the articles. It is urged by the counsel of the defendant, that the deed from Kilbourne the attorney, of Marsh, Lee and Delavan, the trustees of the company to McKean, is void and conveys no title, for the reason, that only three of the five trustees have joined in making it; that all the trustees must act conjointly in executing the trust. The case of *Sinclair* v. *Jackson*, 8 Cowen, p. 543 is cited to support this doctrine. In that case it is decided that " where a trust is delegated to several for a mere private purpose, they must all join in its execution" and the question is then discussed as to the power of trustees to lease without express power. But we find that the chancellor who delivered the opinion of the court in that case, in discussing the question, as to the power of trustees to convey the trust estate separately, says : " As applicable to joint tenants of estates in their own rights, this position (that they might lease) may be true ; but the principle cannot apply to trustees. They have no separate interests of their own on which the separate deeds can operate; they conjointly represent the interests of the *cestui que trust*, and, unless specially authorised to act separately by the instrument creating the trust, they can make no disposition of the trust estate vested in them, otherwise than by their joint deed." This applies directly to the case at bar. We have already shown that the articles of association specially authorize a majority of the trustees to sell and convey the company lands, so that the principle here avowed, establishes the validity of the deed to McKean.

Among the authorities cited, none have questioned the

acts of the trustees, when performed in pursuance of express authority.

That Marsh, Lee & Delavan, being a majority of the trustees, and acting within their trust, have power to sell and convey the land in fee simple, under the articles of association we think, does not admit of a doubt.

It is also contended, that the trustees could not convey the title to the land by attorney. Whether trustees can convey lands by an attorney, without express authority to do so in the instrument creating the trust, depends upon the nature of the trust, and the instrument by which the trust is created. In the case at bar, the question is disposed of by the articles of association, by which the trust is created. The 6th subdivision of the third general article, in speaking of the power vested in the trustees or a majority of them, provides, "To employ, substitute and authorise such attorney or attorneys, agents and clerks, as may be necessary in executing the object of their agreement, and in the care and management of said property, and to allow them such compensation for their services as they may think fit." What are " the objects of the agreement to be carried out and necessary to be executed" to do which, an attorney or attorneys might be appointed by the trustees, or a majority of them? Clearly, among many other things, to sell and execute deeds conveying the title to the lands, to the purchasers thereof. It will not be contended, seriously, that the parties, owners of these lands, could not by their solemn agreement, with a view to promote their interests, empower their trustees, or a majority of them, to appoint an attorney, to act for them in receiving and imparting title. That such an arrangement would be calculated to facilitate the business and promote the interests of the company, is evident. The bill of exceptions shows that Marsh, Lee & Delavan, as trustees for the company, by their power of attorney dated the sixth day of June 1844, did authorize David W. Kilbourne, to act for them in the purchasing and selling of lands on the half breed tract,

and to receive and impart the title, in such manner, and as fully as they could themselves by virtue of the articles of association, for the company.

The ruling of the court below, as to this point, is in accordance with the principles of law. We know of no case where it has been decided that the parties owning lands, whether as individuals, or persons associated by agreement in company form, may not authorize and empower in express terms, others to act for them in conducting their business, or to buy, sell, receive and confer the title to lands. The cases cited by the counsel for the defendant, and ably urged, as applicable to this case, do not affect those of express power given by those having the legal right to impart it. The case of *Pearson* v. *Jameson* 1, McLeans 187, is the case of an executor who was empowered to sell an estate " in the best mode *in his* judgment for the interest of the estate." It was decided that it was " a personal trust," his judgment was relied on for the best interests of the estate. He could not delegate said trust to another. B esides, the language of the trust, as created, could not be construed as authorizing him to delegate his power to another, as in the case at bar; such also is the case in 4th John's Ch. 367. It is there decided that an executor could not delegate the power of selling to an attorney. The principles of law recognised in these cases are indisputable, but cannot be applied to the case at bar. The power to sell and convey the lands of the company, as well as authority, to appoint an attorney to act for them in carrying out that power, is expressly given to the trustees, or a majority of them. Marsh, Lee & Delavan, a majority of the trustees, confer upon Kilbourne the attorney, authority to sell and convey the title to the land. The object of the association being legitimate and proper, they who were entrusted, as parties, had a right by agreement to ordain the terms and mode, by which they would manage and dispose of their interests in the property. Having done so in plain and express terms, it is the duty

of the court to give to the conveyance the sanction of law.

Construing the articles of association thus, we think that a majority of the trustees have plenary power to make contracts for the purchase and sale of the lands of the company, and to act by attorney therein. The numerous cases cited by the counsel of the plaintiff in error, on the subject of the power of trustees, not expressly given, are not applicable to the case at bar.

It is also contended, that the district court erred by admitting in evidence the will of John McKane, deceased. That it was inadmissable, because the probate thereof was made by only one subscribing witness, and no consent or satisfactory evidence shown to have been presented to the court of probate, of its execution.

The statute of the state on the subject of wills, *Rev. Stat.* p. 668, § 13, provides that "When it shall appear to the judge of probate by the consent in writing of the heirs at law, *or by other satisfactory* evidence, that no person interested in the estate intends to object to the probate of the will, he may, on his discretion, grant probate thereof upon the testimony of one of the subscribing witnesses, without requiring the attendance of all of them, although the others should be within reach of the process of the court."

The will was made by John McKean the deceased, in the presence of three subscribing witnesses. It bears date February 23d, 1847. Probate thereof was made before Philip Veile, judge of probate for Lee county, on the 2nd April 1847, by the testimony of Peter Young, one of the subscribing witnesses. The probate judge sets out in his record, that on the day last named, "Peter Young, one of the subscribing witnesses to the will of John Mc-Kean, late of said county deceased, appeared in the court of probate in said county, and after having been duly sworn, declared on oath, that he was present at the execution of said will, and saw the said John McKean subscribing his name to the above instrument, and declare

Barney *v.* Chittenden.

that the same was his last will and testament, and that he together with Justin Millard and James Hill the other witness, subscribed their names as witnesses, in the presence of the testator, at his request, and in the presence of each other, and that said John McKean at the time of executing said will, was of full age and sound mind."

The statute cited above, vests the probate judge with discretionary power, to grant the probate upon the testimony of one of the subscribing witnesses, if he be satisfied by consent of the heirs, or other evidence, that no one interested in the estate, intends to object to the probate thereof. It is urged that the probate court did not acquire jurisdiction of the case, under the will of John McKean, the deceased, so as to grant the letters testamentary to Chittenden and Telford, for the reason that the probate of the will as made by the judge, was not in accordance with the requirement of the statute on wills. This objection cannot prevail here. So far as administration is concerned, both of real and personal estate, the probate courts have, by our statute, the complete original jurisdiction. Though this court may be held, as an inferior tribunal, of limited power, being by the statute, confined in its jurisdiction to the cognizance, and judici al adjustment of the estates of decedents. Nevertheless its judgments orders and decrees, made within the scope of its specific powers, as prescribed by the statute, are to be regarded as conclusive against collateral attack, when jurisdiction has attached, as to the parties and the subject matter.

The probate of the will, by the judge, and the granting of the letters testamentary to Chittenden and Telford, are judicial acts within the proper sphere of the court in the exercise of its jurisdiction, and cannot be impeached for irregularity such as is here alleged. The court must be presumed to have acted, in ordering the probate of the will with a sound discretion in compliance with the statute. In other states the courts have treated the orders

22

and decrees of these courts, not only, as *prima facie*, but as, absolutely conclusive, when acting within the limits of their jurisdictional power. In Pennsylvania the decrees of this court on settlement of an account, &c., are placed as far above impeachment as the adjudications of any other courts. *McFadden* v. *Geddis*, 17, Serg't & Rawle 333. *App* v. *Driesback*, 2 Rawle, 287. *Wimmers* appeal 1 Wheaton 65. The trust and duty appointed by the will, confirmed upon proof, and adjudged sufficient by the court, in granting the letters testamentary to the plaintiffs, furnishes conclusive evidence of the fact to all persons. 1 Con. U. S. 7. In Louisiana "the sentence of a court of probate ordering the execution of a will is, *prima facie* evidence that it was duly proved. *Donaldson* v. *Winter*, 1, Mart. 137, 144. And also, that when probate transactions are put in question the appointment of the executor or administrator by the court of probate cannot be questioned for error, even if letters were granted to the wrong person, &c., such defects can only be set right upon appeal, *McComb* v. *Dunbar*, 1, Mart. 18, 21. This court, particularly as constituted and regulated, by the statute of this state, is presumed to have acted correctly in granting the letters testamentary upon the probate of the will. The 30th section of the act on wills, &c. see *Rev. Stat.* Iowa, p. 672, provides, "that the probate of a will, dividing real estate, shall be conclusive as to the due execution of the will, in like manner as it is a will of personal estate." We therefore consider the probate of the will, as set forth by the record of the probate court sufficient for the purposes of the plaintiffs in this case, establishing the execution of the will, and authorizing the plaintiffs to act as the executors under it. The court possessing entire and general jurisdiction of probate matters under the statute, and being competent to exercise full power in adjudicating them, the presumption is in favor of the correctness of its procedure. *Brown* v. *Wood*, 17, Mass. 72, 2, Greenl. on Ev. § 339.

The 4th assignment of error, is that the plaintiffs could not sustain their action, not having shown that they executed bonds as required by law.

What has been already said upon the previous assignment is applicable to this. Upon the production of letters testamentary authorized by the proper officer, in due form of law, they were entitled to legal recognition in court, as the executors of the last will and testament of John McKean, to maintain this action in order to the establishment of the rights and interests of the estate.

Judgment affirmed.

*Geo. C. Dixon,* for plaintiff in error.

