Oweñ, C. J.
1. It is maintained on behalf of the petitioner that neither the house of representatives nor its committee had power to command him to remove any of the poll-hooks committed to his custody from his office and take them out of his county . This claim is based upon the assumption that section 2961 of the Revised Statutes requires that the poll-books shall remain in his office and not be removed therefrom under any circumstances.
This section provides that:
“After canvassing the votes in the manner aforesaid, the judges, before they disperse, shall put under cover one of the poll-books, seal the same, and direct it to the clerk of the court of common pleas of the county; and one of the judges (to be determined by lot, if they can not othervise agree), shall convey the same to the clerk, at his office, within three days from the day of election; and the other poll-book shall be forthwith deposited with the clerk of the township, or the clerk of the municipal corporation, as the case may require, there to remain for the use of any person who may choose to inspect the same after the expiration of the time within which any legal notice of the contest could be given.”
It requires but a oasual examination of this section to show that the contention of the petitioner proceeds upon a misconstruction of it; that the words “ there to remain” have relation not to the poll-book which is to be conveyed to the clerk of the court of common pleas, but to “ the other poll-book,” which is to be deposited with the clerk of the township or municipal corporation.
That this position of the petitioner is untenable, clearly appears from the provisions of sections 3003, 3004, 2998, 2999, and 3001 (Rev. Stats.) These sections are more fully considered in the third paragraph of this opinion. They cleai’ly contemplate a trial before that branch of the general assembly to which a contest is taken on appeal, and *150 the production before such house, or a committee acting for .it, of the returns of an election which is being investigated.
The right of the house to command the production before it, or its committee, of the papers named in the subpoena, and of the witness to produce them, is clear.
2. It is further maintained in behalf of the petitioner, that even if it was lawful for him to produce before the committee at Columbus the poll-book demanded, the house had no power, upon his refusal to produce it, to commit him as a punishment for contempt of its authority.
The case of Anderson v. Dunn, 6 Wheaton, 204 (decided by the supreme court of the United States in 1821), declared the doctrine that representative bodies in America possessed, inherently, the power to punish for contempt. For sixty years following this decision, its authority remained unquestioned in this country. The repeated and unqualified declarations of this principle by courts and text-writers are to be traced to this case. Maurice v. Dyer, 2 Greene, 165; Yates v. Lansing, 9 Johnson, 395; 1 Burr’s Trial, 352; United States v. Hudson, 7 Cranch, 32; 1 Kent’s Com. 300; United States v. New Bedford Bridge, 1 W. & M. 401; Tenney’s case, 23 N. H. 162; State v. Copp, 15 N. H. 212.
The later case of Kilbourn v. Thompson, 103 U. S. 168, is relied upon by counsel for petitioner as an authority in support of his position, and as overruling Anderson v. Dunn.
In the case of Kilbourn v. Thompson, the plaintiff had, on proceedings similar to those taken in the present case, been convicted of a contempt, and sentenced by the house of representatives of congress to imprisonment. It appeared on the face of the proceedings, that the contempt consisted of his refusal to answer a question propounded by a committee of the house appointed by a resolution, which was set forth. This resolution directed the committee to investigate certain business transactions in which the United States government was interested simply as a creditor of one of the parties, and the supreme court held that the preamble and resolution under which the committee was appointed showed *151 upon their face that the investigation ordered did not have for its object any legislative action, or the impeachment of any officer of the government, but the collection of a debt owing to the government, a power which congress could not exercise, but which was vested only in courts of justice; that in orderiug such an investigation, the house of representatives exceeded the limits of its powers, and, consequently, the committee had no.authority to require the plaintiff to testify before it. On this sole ground, the decision of the court was placed, but in arriving at this conclusion, several important points, which have a bearing upon the question now before us, were discussed in the highly instructive opinion of Justice Miller.
It may be conceded that so far as Anderson v. Dunn declared the doctrine/ that representative bodies in this country possess, irtherently, the general and unlimited' power to punish for contempts, it is overruled by Kilbourn v. Thompson, but so far as it has application to the questions now before us, its authority remains unshaken by the latter case.
This is apparent from the following language of the syllabus of Kilbourn v. Thompson: "Held, that, although the house can punish its own members for disorderly conduct, or for failure to attend its sessions, and can decide cases of contested elections, and determine the qualifications of its members, and exercise the sole power of impeachment of officers of the government, and may, where the examination of witnesses is necessary to the performance of these duties, fine or imprison a contumacious witness — there is not found in the constitution of the United States any general power vested in either house to punish for contempt.”
In the course of a very learned and able opinion, Justice Miller says: “Each house is by the constitution made the judge of the election and qualification of its members. In deciding on these, it has an undoubted right to examine witnesses and inspect papers, subject to the usual rights of witnesses in such cases; and it maybe that a witness would be subject to like punishment at the hands of the body en *152 gaged in trying a contested election, for refusing to testify, that he would if the case were pending before a court of judicature.”
Here is a recognition of the power which the house exercised m the case at bar.
The case of McDonald v. Keeler, 39 Hun (N. Y.) 563, which is relied upon by the petitioner, is not an authority against the power of the house to commit, for contempt, a witness in an election contest, for the reasons (1) that, as counsel concede, it was reversed by the court of appeals of that state (99 N. Y. 463), and (2) that while denying the power of a branch of the general assembly to punish for contempt in the particular case before it, Learned, J., qualified the general rule in the following language:
“ Here, then, we must notice that by the constitution the legislature has certain judicial powers. Each branch is the judge of the qualifications of its own members. This power is judicial in character, though often partisan in fact. There is a power to remove certain judicial officers. There is a power of impeachment. These are judicial powers. They imply a decision on past occurrences, and a giving judgment accordingly. It may be, therefore, that in all actions of this kind, the senate and the assembly may rightfully enforce the same power of punishing for refusing to answer questions which is exercised by courts. These cases, therefore, we exclude from consideration.”
The constitution of Ohio ordaius (Art. 2, § 6) that: “Each house shall be judge of the election, returns, and qualifications of its own members.”
The house of representatives was exercising, through its committee, the power thus conferred, at the time of the commitment of the petitioner.
The power to enforce the attendance and testimony of witnesses, and the production .of papers affecting the election of its members, is indispensable to the efficient exercise of the power so conferred.
That the power to commit a recusant witness for contempt in disobeying the command of a subpoena issued *153 in the due course of an investigation affecting the election of any of its members, is invested in each house, is now too firmly established to be considered a debatable question.
Anderson v. Dunn, 6 Wheaton, 204; Kilbourn v. Thompson, 103 U. S. 168; McDonald v. Miller, 39 Hun. (N. Y. Sup. Court) 563; s. c., 99 N. Y. 463; Rapalje on Contempts, § 2, and cases there cited.
3. Counsel for petitioner maintains, further, that the only power conferred by statute on each house to proceed against a disobedient witness for contempt of its authority is derived from section 52 (Revised Statutes), and that the power therein attempted to be conferred is too vague and indefinite regarding the mode of punishment to be capable of legal enforcement.
Section 50, Revised Statutes, provides: “That a chairman may issue subpoenassection 51 provides to whom subpoenas shall be directed, and how served, and the form; and section 52 provides punishment for disobeying the subpoena, or refusing to answer, or refusing to produce books or papers.
Section 52 provides : “ Whoever willfully fails to appear in obedience to such subpoena, or appears and l’efuses to answer any question pertinent to the matter of inquiry, or declines to produce any paper or record in his possession or control, shall be liable to the pains and penalties for contempt of the authority of the general assembly, . . . according to parliamentary rules and usages in case of contempt ; and the chairman of the committee before which such person fails to appear, or refuses to answer, or produce a paper or record, as aforesaid, on the order of the committee, or a sub-committee, shall report the facts to the proper branch of the general assembly, and on like order, issue a warrant for the arrest and conveyance of the witness before that branch, to answer for the contempt; and the sergeant-at-arms, or sheriff, to whom such warrant is directed, shall forthwith execute the same,” etc.
*154 Rales have been adopted by the house to effectuate the provisions of this section.
Counsel for petitioner repeatedly assorts, during his argument, that it is conceded that the only statutory power to commit for contempt is to be found in this section (52). By whom this concession is made we are not advised. Certainly, this court has not made, nor is it bound by, any such concession.
On the contrary, we find that express statutory power is given to make the order by which the petitioner was placed in the custody from which he seeks to be discharged by the proceeding we are reviewing.
Section 8003 (Revised Statutes) provides, generally, for an appeal to, and contest before, either branch of the general assembly, of the right of a person declared elected thereto. Section 3004 provides that the provisions of sections 2998, 2999, and 3001 (relating to contests for county offices), shall apply to contests for seats in the general assembly. Section 2998 provides, that the-officers authorized to take depositions may issue “ subpoenas duces tecum for the production of the books, papers, ballots, or things relating to such election; and they may compel the attendance of witnesses, and the production of every thing named in the subpoenas.”
Section 2999 provides that:
“ Whoever refuses to obey such subpoena duces tecum, or to produce any books, papers, ballots, or things in his possession, or under his control, named in such writ, shall be committed to the jail of the county by the justices or other officer, there to remain until he produces the things called for.”
Section 3001 provides that:
“ On the trial either party may introduce oral testimony, or depositions of witnesses taken as provided in civil actions; and whenever any omission, defect, or error occurs in the proceedings of an officer, in declaring or certifying that a person was duly elected to an office, the same may *155 be corrected by oral or other testimony offered at the hearing of any preliminary proceeding, or at the trial.”
These provisions, having been thus engrafted upon those for contest for membership of either house, furnish specific warrant for the action of the house in the case before us. This renders unnecessary any further discussion of the provisions of section. 52, or the rules of the house, so far as they relate to commitment of witnesses for contempt.
4. The questions we have been considering were incidentally involved in the case of Dalton, Clerk v. The State ex rel. Richardson, 43 Ohio St. 652. This court there held that the .jurisdiction conferred by the constitution upon each house to “judge of the election, returns, and qualifications of its own members,” is supreme aud exclusive, and that: “In a contest in either house, the broadest range is given contestants to purge the ballot and returns of the consequences of neglect, mistake, fraud, and crime, from the opening of the polls to the final declaration of the result.”
The pertinency of this language to the case before us is emphasized by the fact that it was used with reference, among other things, to the very paper (then before this court) whose production was commanded by the subpoena issued in the ease at bar. It was used to support the proposition that a contest before either house afforded a complete and adequate remedy for fraud, neglect, or crime at the election or in making up the returns thereof. If it be true that neither house of the general assembly has power to compel the production before it, or a committee acting for it, in the trial of a contest involving the election of a member, of the returns and other papers affecting such election, the declaration of this court in the case last cited is but a false pretense, and a contest in either house is not an adequate remedy for the contestant.
The parties to such a contest are entitled to the enlightened judgment of each member of the house upon the questions involved in the contest.
Where a full understanding of- such questions requires a *156 personal inspection of the returns of the election, it is the right of each party to the contest to ask that they be brought within reach of each member whose vote is to aid in the final determination-of the contest. With the thoroughness of the investigation dependent wholly upon the pleasure or caprice of witnesses, and without the power to enforce their attendance and testimony and the production of papers, by such means, if necessary, as the house of representatives used in the present case, it would be worse than an absurdity to say, as did this court in the case last cited, that: “In a contest in either house the broadest range is given contestants to purge the ballot and returns of the consequences of neglect, mistake, fraud, and crime, from the opening of the polls to the final declaration of the result.”

Judgment affirmed.